UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENNOR HARRISON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-5037** |
| **JOHN W. STONE OIL DISTRIBUTORS, LLC, ET AL.** | **SECTION "O"** |

## ORDER AND REASONS

Before the Court is a motion[1] by Defendant John W. Stone Oil Distributors, LLC ("Stone Oil") to dismiss under Rule 12(b)(6) and/or strike under Rule 12(f) certain claims, allegations, and exhibits in Plaintiff Kennor Harrison's first amended and supplemental complaint.[2] Harrison opposes[3] the motion, and Stone Oil filed a reply.[4] For the following reasons, Stone Oil's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The facts that follow are drawn from the well-pleaded allegations of Harrison's amended complaint, which the Court must accept as true and view in a light most favorable to Harrison. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). This case is based on allegations that Harrison, an African American, experienced race-based discrimination and retaliation while employed at Stone Oil from October 27, 2014, to

---

[1] ECF No. 24.
[2] ECF No. 21.
[3] ECF No. 33.
[4] ECF No. 36.

1

November 18, 2021.[5] During this period, Harrison primarily worked as a tankerman but aspired to become a captain.[6] To be considered for a captain position, Stone Oil had a "policy and procedure" requiring employees to meet certain criteria.[7] Namely, employees had to obtain a Steersman credential, provide two recommendations from former captains with whom they worked, and complete training in the Steersman Program.[8] The Steersman Program acted as "an apprenticeship where certain employees [we]re considered, at Stone Oil's discretion, for training under the supervision of a Captain before being allowed to train for a position as a Captain."[9] According to Harrison, Stone Oil maintains a list of employees eligible to participate in the Steersman Program.[10]

Harrison claims to have satisfied the program's eligibility requirements: he secured the Steersman credential and obtained the requisite recommendation letters from existing captains.[11] Harrison applied for the Steersman Program and initially was told by a Stone Oil Human Resources representative that he would be placed on the list.[12] While awaiting selection for the program, Harrison was transferred to a different Stone Oil position to continue working as a tankerman.[13] Yet, Harrison

---

[5] ECF No. 21 ¶¶ 11, 30. In his amended complaint, Harrison states that he was terminated on November 18, 2021. In his EEOC charge, however, he lists his termination date as November 17, 2021. ECF No. 21-2. Harrison again references the November 17, 2021 date in his opposition to Stone Oil's motion to dismiss. ECF No. 25.
[6] *Id.* ¶¶ 11–14.
[7] *Id.* ¶ 14.
[8] *Id.*
[9] *Id.* ¶ 15.
[10] *Id.* ¶ 16.
[11] *Id.* ¶¶ 17, 19.
[12] *Id.* ¶ 21.
[13] *Id.* ¶ 22.

made it known to Stone Oil that he remained interested in becoming a captain, telling management that "his ultimate professional goal was to become an African American Captain for a Stone Oil vessel."[14]

Nevertheless, according to Harrison, when he informed Stone Oil that he had met the program's eligibility requirements, the Human Resources representative became "visibly upset."[15] After his third request to participate in the program, Harrison received a termination notice stating that his performance was "below company standards" and that he was being terminated "due to safety concerns and misconduct."[16] Harrison claims that he had "no prior counseling, warnings or write ups" as to safety issues before his termination, and had previously received "safety bonuses" for his "superior performance."[17] Harrison alleges that he was terminated in November 2021 "for false reasons and due to his race."[18] According to Harrison, Stone Oil had never promoted an African American employee to captain, had previously received discrimination complaints from other African American employees, and "deliberately denied African American employee's [sic] opportunities that were afforded to Caucasian employees."[19]

Harrison filed a complaint alleging that Stone Oil discriminated against him based on his race in violation of 42 U.S.C. Section 2000e ("Title VII") and 42 U.S.C.

---

[14] *Id.* ¶¶ 23–24, 29.
[15] *Id.* ¶ 28.
[16] *Id.* ¶¶ 29, 31; ECF No. 21-2.
[17] *Id.* ¶ 29.
[18] *Id.* ¶ 30.
[19] *Id.* ¶¶ 38–44.

Section 1981.[20] Stone Oil filed a motion to dismiss, requesting the Court dismiss several of Harrison's claims due to Harrison's failure to exhaust administrative remedies, his failure to state a claim, and the untimeliness of his claims.[21] Harrison then requested leave to amend his petition "to address and remedy certain issues raised in Stone Oil's motion."[22] The Court granted Harrison's motion and he filed his amended complaint.[23]

Before filing either of his complaints, Harrison filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 21, 2022.[24] Relevant to the instant motion, Harrison alleged in his charge that: (1) he requested to be considered for acceptance into the Steersman Program; (2) he was told multiple times that his name was on the list; (3) despite being informed that he was being considered, a white employee was selected for the Steersman Program; (4) Harrison would have been the first, and only, African American captain employed by Stone Oil; and (5) Stone Oil has discriminated against Harrison because of his race.[25]

Stone Oil now moves for the dismissal of the following claims asserted in Harrison's amended complaint: (1) Title VII disparate impact, (2) Title VII retaliation, and (3) Title VII failure to promote.[26] Stone Oil also requests that the

---

[20] ECF No. 1.
[21] ECF No. 12.
[22] ECF No. 17.
[23] ECF No. 20.
[24] ECF No. 21-2.
[25] *Id.*
[26] ECF No. 24.

4

Court strike paragraphs 33–52 and 57–72 and exhibits 8–10 and 12–13 under Rule 12(f).[27] The Court considers each claim in turn.

## II.  ANALYSIS

### A.  Motion to Dismiss

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as

---

[27] *Id.*

true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

### 1. Title VII Disparate Impact Claim

Stone Oil first moves to dismiss Harrison's disparate-impact discrimination claim for failure to exhaust his administrative remedies.[28] According to Stone Oil, Harrison failed to exhaust his administrative remedies because his EEOC charge did not identify a neutral Stone Oil employment policy that disparately impacted him and other African Americans.[29]

Title VII creates a cause of action for two separate theories of discrimination: disparate treatment and disparate impact. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Id.* A disparate impact claim "addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group." *Id.* Unlike a disparate treatment claim, a disparate impact claim does not require proof of or a finding of a discriminatory motive. *Id.*

Before bringing a disparate-impact claim under Title VII, the Fifth Circuit has long required plaintiffs to exhaust their administrative remedies. *Price v. Choctaw*

---

[28] ECF No. 24-1 at 5–6.
[29] *Id.*

6

*Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (internal quotations omitted). To satisfy this exhaustion requirement, a claim must be "asserted before the EEOC" or "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination a plaintiff makes before the EEOC." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 472 (5th Cir. 2016) (internal quotations omitted). Accordingly, "the crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

To assess whether exhaustion has occurred, courts will read the factual charge "somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Pacheco*, 448 F.3d at 789. The charge is "liberally" construed "because Title VII was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (internal quotations omitted). Courts thus "look[] slightly beyond [the charge's] four corners, to its substance rather than its label." *Doe v. Merritt Hosp., LLC*, 353 F. Supp. 3d 472, 479 (E.D. La. Dec. 18, 2018) (internal quotations omitted).

In arguing that Harrison failed to exhaust administrative remedies, Stone Oil relies on the Fifth Circuit's decision in *Pacheco*.[30] 448 F.3d at 795. There, a Hispanic

---

[30] *Id.*

federal employee brought Title VII disparate-impact and treatment claims against his employer alleging that he was passed over for a promotion because of his race. *Id.* at 786. The Fifth Circuit concluded that the plaintiff had not exhausted his administrative remedies in part because he failed to identify "any neutral employment policy that would form the basis of a disparate-impact claim." *Id.* at 792. The court reasoned that "[a] neutral employment policy is the cornerstone of any EEO disparate-impact investigation" because the "EEO must evaluate both the policy's effects on protected classes and any business justifications for the policy." *Id.*

In turn, Harrison relies on a Second Circuit case discussed by the *Pacheco* court, *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992).[31] There, the Second Circuit held that the plaintiff gave fair notice of his disparate-impact claim, and thus exhausted his administrative remedies. *Id.* The plaintiff's charge stated that he was passed over for promotion because of his Portuguese ancestry. *Id.* at 1334. He claimed that (1) he applied for a promotion; (2) such promotions were governed by an "eight-years' experience" rule; (3) he arguably met this eight-year experience requirement; (4) the promotion was awarded to someone less qualified than him; and (5) he was the only Portuguese employee in his job classification. *Id.*

In *Pacheco*, the Fifth Circuit found the *Gomes* court's holding instructive: "most importantly . . . the plaintiff in *Gomes* had identified a facially neutral employment policy (the eight-year rule) that provided a foundation for an EEO disparate-impact investigation." 448 F.3d at 790. The Fifth Circuit further noted that the Second

---

[31] ECF No. 25 at 8.

8

Circuit "recognized that the eight-year rule would have put the EEO on notice of a possible disparate-impact claim, thus 'an investigation of [the plaintiff's] disparate impact claim would reasonably have flowed from an investigation of his disparate treatment claim.'" *Id.* (quoting *Gomes*, 964 F.2d at 1335). Unlike the court in *Gomes*, the Fifth Circuit held that Pacheco's administrative charge failed to identify any neutral employment policy to allege a disparate-impact claim. *Id.* at 792.

The Court finds the present case more akin to *Gomes* than *Pacheco*. Harrison's amended complaint makes a Title VII disparate-impact claim alleging race-based discrimination in the selection of participants for the Steersman Program.[32] Harrison's EEOC charge, liberally construed, sets out facts supporting this claim: (1) Harrison requested to be considered for acceptance into the Steersman Program; (2) he was told multiple times that his name was on the list; (3) despite being informed that he was being considered, a white employee was selected for the Steersman Program; (4) Harrison would have been the first, and only, African American captain employed by Stone Oil; and (5) Stone Oil has discriminated against Harrison because of his race.[33] Because an investigation into the Steersman Program could be reasonably expected to grow out of these factual allegations, the Court concludes that Harrison has exhausted his administrative remedies as to his disparate-impact claim.[34]

---

[32] ECF No. 21 ¶¶ 57–72.
[33] ECF No. 21-2.
[34] The Court does not read the amended complaint as to include a disparate-impact claim under 42 U.S.C. § 1981. ECF No. 21. Even so, § 1981 disparate-impact claims are impermissible. "While disparate impact claims do not require proof of intent to discriminate, [Section] 1981 claims necessarily entail proof of intentional discrimination." *Gray v. Entergy Operation, Inc.*, 240 F.3d 1074, 2000 WL

9

### 2. Title VII Retaliation Claim

Stone Oil next argues that Harrison failed to exhaust administrative remedies for his Title VII retaliation claim because he did not include such allegations in his EEOC charge.[35] To state a claim for retaliation under Title VII, a plaintiff must show that "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017) (internal quotations omitted). "An employee has engaged in activity protected by Title VII if [he] has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Dixon v. Moore Wallace, Inc.*, 236 F. App'x 936, 937 (5th Cir. 2007) (quoting 42 U.S.C. § 2000e-3(a)). Specifically, Stone Oil contends that Harrison failed to state a retaliation claim because he did not allege in his charge that he engaged in conduct protected by Title VII and that he was retaliated against for that protected conduct.[36]

In response, Harrison contends that retaliation claims are exempt from this exhaustion requirement,[37] citing to another case in this district, *Mahbod v. Jones*, No. CIV.A. 13-5546, 2014 WL 2084157 (E.D. La. May 19, 2014). After filing his EEOC

---

1835299, at *4 (5th Cir. 2000) (cleaned up) (quoting *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)); *see Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982) (concluding that Section 1981 "can only be violated by purposeful discrimination."). To the extent Harrison seeks to assert a § 1981 disparate-impact claim, that claim is dismissed. To be sure, the amended complaint includes a disparate-treatment claim under § 1981. ECF No. 21 ¶¶ 73–85. Stone Oil has not moved to dismiss that claim and thus it survives this motion to dismiss.

[35] ECF No. 24-1 at 6–8.
[36] *Id.*
[37] ECF No. 25 at 11.

complaint, the *Mahbod* plaintiff alleged in his complaint that he was subjected to retaliation in the form of unusual scrutiny and oversight of his work. *Id.* at *2–3. The plaintiff's alleged retaliation was not included in his EEOC charge because it came after and in response to his EEOC charge. *Id.* at *2. Because he alleged that the "retaliatory scrutiny occurred *after* his EEOC charge was filed" and the "scrutiny was in direct *retaliation* for the charge," the Court found plaintiff had exhausted his administrative remedies. *Id.* (emphasis added). The *Mahbod* court relied on a Fifth Circuit opinion, *Gupta v. East Texas State University*, which established a narrow exception to the exhaustion rule for retaliation claims. 654 F.2d 411 (5th Cir. 1981). Under this exception, a plaintiff need not file a second EEOC charge if the acts underlying the retaliation claim came after and grew out of the first EEOC charge. *Id.* at 414. This is because "[i]t is the nature of retaliation claims that they arise after the filing of an EEOC charge." *Id.* And requiring a double filing "would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *Id.*

Stone Oil argues *Mahbod* is distinguishable from the instant case because the alleged retaliation, Harrison's termination, did *not* come after, or in response to, Harrison's EEOC charge.[38] Thus, according to Stone Oil, Harrison is not exempt from the exhaustion requirement.[39] The Court agrees. Harrison was terminated on November 17, 2021, and filed his EEOC charge several months later, on June 21,

---

[38] ECF No. 24-1 at 7–8; ECF No. 31 at 4–5.
[39] *Id.*

11

2022.[40] Harrison even mentions his termination in his charge.[41] Thus, the *Gupta* exception is inapplicable here because the alleged retaliation did not come after or result from Harrison's EEOC charge.

But the inquiry does not end there. While the alleged cause of the retaliation in *Mahbod* and *Gupta* was the filing of an EEOC complaint, Harrison offers a different cause for Stone Oil's retaliation: because Harrison, as an African American, repeatedly and persistently sought entry into the Steersman Program.[42] According to the amended complaint, Harrison was "wrongfully terminated by Stone Oil after repeatedly reporting that he was not able to participate in the Steersman Program and train to become a Captain."[43] This "repeated reporting to Stone Oil" was tantamount to "opposing [Stone Oil's] unlawful practice of intentionally not providing African American employees with the same opportunities as Caucasian employees."[44] Harrison further alleges that "African American employees who engaged in this type of protected activity were . . . wrongfully terminated for being persistent in their requests for additional training and/or promotions."[45] Harrison urges the Court to find that these allegations of retaliation would be reasonably expected to grow out of Harrison's EEOC charge.[46]

---

[40] ECF No. 21-2.
[41] *Id.*
[42] ECF No. 25.
[43] ECF No. 21 ¶ 68.
[44] *Id.* ¶ 69.
[45] *Id.* ¶ 70.
[46] ECF No. 25 at 11–12.

Even liberally construed, the EEOC charge makes no mention of Stone Oil retaliating against Harrison for opposing Stone Oil's discriminatory practices, much less any other claim for retaliation. At most, the charge reflects that Harrison asked to be placed on the list for the Steersman Program; spoke with a Human Resources representative when he learned that he wasn't selected for the program; asked to see the list of candidates awaiting entry into the program (and was not provided the list); and continued to ask about the program while being "told that [his] name was on the list."[47] Nowhere in the charge does he allege that he raised issues of race or discrimination in the selection of participants for the Steersman Program. Nowhere does he allege that he complained to his supervisors about African American candidates being passed over for promotion. And nowhere does he allege that other African American employees were terminated for persisting in their requests for training and promotion. The charge does not mention "retaliation" at all—only that Harrison suffered discrimination based on his race. Because "discrimination and retaliation claims are distinct," an EEOC charge only alleging discrimination generally does not also exhaust a plaintiff's administrative remedies for retaliation. *See Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 Fed. App'x 917, 921 (5th Cir. 2009) (per curiam). Accordingly, Harrison has failed to exhaust his administrative remedies as to his Title VII retaliation claim and it is dismissed.

---

[47] ECF No. 21-2.

### 3.  Title VII Failure to Promote Claim

Next, Stone Oil contends that Harrison's Title VII failure-to-promote claim should be dismissed because it is untimely.[48] In a deferral state like Louisiana, a plaintiff must file his charge with the EEOC within 300 days from the date of the alleged discriminatory act to preserve his right to sue in federal court.[49] *See DeBlanc v. St. Tammany Parish Sch. Bd.*, 2015 WL 1245781, at *6 (E.D. La. Mar. 18, 2015) (citing 42 U.S.C. § 2000e-5(e)(1) (providing that a Title VII plaintiff must file a charge within 300 days after the alleged unlawful employment practice in deferral states)).

Stone Oil argues that Harrison filed his charge on June 21, 2022, and that any claims arising more than 300 days prior, or before August 25, 2021, are time-barred.[50] According to Stone Oil, Harrison's charge alleges that he accepted a promotion in February 2021 while he waited to be accepted into the Steersman program.[51] The charge states that "[s]hortly after taking the promotion," Harrison was informed that a white employee was selected for the Steersman program.[52] Stone Oil argues that even a liberal interpretation of the word "shortly" would mean three to four months, or May to June 2021, making Harrison's failure-to-promote claim untimely.[53]

---

[48] ECF No. 24-1 at 8–9.
[49] A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 n.1 (5th Cir. 1988). The Louisiana Commission on Human Rights was initially funded and began operating in April 1994, making Louisiana a deferral state since that time. LA. STAT. ANN. § 51:2233.
[50] ECF No. 24-1 at 8–9.
[51] ECF No. 21-2.
[52] *Id.*
[53] ECF No. 24-1 at 8.

14

Harrison maintains that he was still working towards a promotion until he was terminated on November 17, 2021.[54] Harrison raises a continuing violation theory, alleging that he was continuously employed and that he continuously inquired about his promotion until his termination.[55] He argues that, because he was repeatedly denied a promotion until November 17, 2021, the deadline for filing an EEOC charge would be on or about September 13, 2022.[56] Alternatively, Harrison requests that the Court defer ruling on timeliness until depositions are taken to corroborate the timing of Harrison's promotion denial.[57] The Court agrees with Harrison that further discovery would be helpful in determining the timeliness of this claim. Thus, the Court will deny Stone Oil's motion as to the failure-to-promote claim and address the timeliness of the claim, if raised, at the summary judgment phase.

### B. Motion to Strike

Lastly, Stone Oil moves to strike several paragraphs and exhibits from Harrison's amended complaint.[58] Rule 12(f) governs motions to strike; it permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). A Rule 12(f) motion to strike is a "drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868

---

[54] ECF No. 25 at 14.
[55] *Id.* at 13–14.
[56] *Id.*
[57] *Id.*
[58] ECF No. 24-1 at 9–13. Stone Oil moves to strike paragraphs 33–52 and 57–72 along with exhibits 8–10 and 12–13 of Harrison's amended complaint due to their alleged immateriality and/or impertinence.

15

(5th Cir. 1962); *see also Synergy Mgmt., LLC v. Lego Juris A/S*, No. 07-5892, 2008 WL 4758634, at *1 (E.D. La. Oct. 24, 2008) ("Motions to strike made under Rule 12(f) are viewed with disfavor by the federal courts, and are infrequently granted."). A motion to strike should be granted only when "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Johnson v. Harvey*, No. 96-3438, 1998 WL 596745, at *7 (E.D. La. Sept. 8, 1998) (internal quotation omitted). Immateriality is established by showing that the challenged allegations "can have no possible bearing upon the subject matter of the litigation." *Bayou Fleet P'ship v. St. Charles Parish*, No. 10-1557, 2011 WL 2680686, at *5 (E.D. La. July 8, 2011) (internal quotation omitted).

The Court finds Stone Oil has not carried its burden here. First, the allegations in paragraphs 33–52 relate to Harrison's race-based disparate-treatment and disparate-impact claims.[59] Specifically, Harrison discusses the qualifications of other employees admitted to the Steersman Program along with the additional opportunities afforded to white employees ("Stone Oil deliberately denied African American employee[]s opportunities that that were afforded to Caucasian employees.").[60] The Court similarly will not strike paragraphs 57–72, as these allegations are relevant to Harrison's discrimination claims generally.[61] Specifically, they speak to Stone Oil's alleged discriminatory motive, including Harrison's alleged rejection from the Steersman Program because of his race and the less-favorable

---

[59] ECF No. 21 ¶¶ 33–52.
[60] *Id.*
[61] *Id.* ¶¶ 57–72.

16

treatment he allegedly received in favor of white employees.[62] The Court finds it hard to fathom how these allegations of discrimination "can have no possible bearing" on Harrison's case. *Bayou Fleet P'ship*, 2011 WL 2680686, at *5.

Lastly, Stone Oil moves to strike several exhibits attached to Harrison's amended complaint. Stone Oil argues that exhibits 8, 9, and 12, which include statements of former Stone Oil employees, should be stricken because they involve incidents pre-dating Harrison's alleged discrimination and termination.[63] Harrison argues these employees experienced similar discriminatory treatment, and their statements are thus relevant to his disparate-treatment claims.[64] Additionally, Stone Oil seeks to strike exhibit 10,[65] a settlement agreement Stone Oil executed related to hiring discrimination for deckhand positions, and exhibit 13, an amended complaint by a former Stone Oil employee who asserted similar Title VII claims connected to his termination.[66] Stone Oil argues these exhibits should be stricken because they are not pertinent to this case.[67] Harrison rejoins that this agreement and statements from other African American employees are relevant to his request for injunctive relief.[68] This Court agrees with Harrison and refuses to strike these materials. *See Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 656 (E.D.

---

[62] *Id.*
[63] ECF No. 24-1 at 11–13.
[64] ECF No. 25 at 18.
[65] Both parties discuss some confusion with the numbering and ordering of Harrison's exhibits. As Harrison notes, this conciliation agreement is attached to Harrison's complaint as exhibit 18, not exhibit 10. ECF No. 21-10.
[66] *Id.*
[67] *Id.*
[68] *Id.* at 20.

La. 2019) ("None of the allegations to which defendants object is immaterial, and therefore the Court will not strike them.").

### III. CONCLUSION

**IT IS ORDERED** that Defendant's motion[69] to dismiss and/or strike is **GRANTED IN PART** and **DENIED PART.** The Court grants Defendant's motion on Plaintiff's Title VII retaliation claims. This claim is **DISMISSED WITH PREJUDICE**. The Court denies Defendant's motion on Plaintiff's Title VII disparate-impact claim and his Title VII failure-to-promote claim and denies Defendant's motion to strike.

New Orleans, Louisiana, this 3rd day of July, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[69] ECF No. 24.