## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KENNOR HARRISON**                                          **CIVIL ACTION**

**VERSUS**                                                           **NO. 23-5037**

**JOHN W. STONE OIL DISTRIBUTORS, LLC**          **SECTION "O"**

## <u>ORDER AND REASONS</u>

Before the Court in this employment-discrimination case is the motion[1] of Defendant John W. Stone Oil Distributors, LLC for summary judgment dismissing Plaintiff Kennor Harrison's claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Those claims arise from racial discrimination that Harrison, an African American man and aspiring captain, says he endured while working for maritime-fuel-services provider Stone Oil. At the core of his claims is the "Steersman Program"—a personnel development program that Stone Oil uses to train certain qualifying employees to pilot Stone Oil's fleet of vessels. Harrison was eligible for the Steersman Program, but Stone Oil did not choose him for it; Stone Oil chose white men instead. Stone Oil ultimately fired Harrison for yelling at a customer. Claiming he was fired and not chosen for the Steersman Program because he is African American, Harrison sued Stone Oil on failure-to-promote, discriminatory-discharge, disparate-impact, and other theories. Stone Oil is owed summary judgment on each.

---

[1] ECF No. 49.

First, Harrison's failure-to-promote claims fail at the pretext stage of the *McDonnell Douglas* framework. That is because Harrison lacks evidence creating a genuine dispute that (A) he was clearly better qualified that any of the three white employees chosen over him for the Steersman Program; or (B) Stone Oil's legitimate, nondiscriminatory reasons for not promoting him are false or unworthy of credence.

Second, Harrison's discriminatory-discharge claims fail at both the *prima-facie*-case and pretext stages of the *McDonnell Douglas* framework. As for his *prima facie* case, Harrison fails to cite evidence sufficient to create a genuine dispute that he was replaced by, or treated less favorably than, any similarly situated non-African American Stone Oil employee. As for pretext, Harrison fails to cite evidence creating a genuine dispute that Stone Oil's legitimate, nondiscriminatory reason for firing him—yelling at a customer over the radio—is a pretext for racial discrimination.

Finally, Harrison's disparate-impact claim fails for at least two independent reasons. He lacks the statistical evidence he needs to make a *prima facie* case of disparate-impact discrimination. And in all events, Harrison abandoned his disparate-impact claim by inadequately briefing it in opposition to Stone Oil's motion.

Accordingly, for these reasons and those that follow, Stone Oil's motion for summary judgment is **GRANTED**.

## I.    BACKGROUND

This employment-discrimination case arises from Kennor Harrison's claim that his former employer, maritime-fuel-services provider Stone Oil, fired him and did not promote him to the Steersman Program because he is African American.

Stone Oil provides fueling services to boats, tugs, and larger vessels along the Mississippi River and in the Gulf of Mexico.[2] The company owns barges and other vessels that it uses to deliver and haul fuel to customers.[3] Those barges and vessels are crewed by Stone Oil employees working in some or all of these positions (listed in descending order of seniority): captain/master, mate/mate pilot, chief engineer, assistant engineer, apprentice mate/steersman, tankerman, and deckhand.[4]

Stone Oil has a personnel development program—known as the "Steersman Program"—that Stone Oil uses to train certain eligible Stone Oil employees to become pilots of Stone Oil's barges and other vessels.[5] Under the 18-month Steersman Program, Stone Oil promotes an eligible tankerman to the position of apprentice mate and trains that person to become a mate/mate pilot for Stone Oil's inland fleet.[6]

Stone Oil HR Manager Marisa Andrews is primarily responsible for selecting eligible employees to enter the Steersman Program.[7] To be eligible for that program, a Stone Oil employee must (1) have achieved the rank of tankerman; (2) been recommended by two captains; and (3) "demonstrated strong leadership skills and performance."[8] Once an employee provides letters of recommendation from two captains, Andrews places the employee in a "pool" with other eligible candidates.[9]

---

[2] ECF No. 49-2 at ¶ 2.
[3] *Id.* at ¶ 3.
[4] *Id.* at ¶¶ 3–4 (capitalization modified).
[5] *Id.* at ¶ 25.
[6] *Id.*
[7] *Id.* at ¶ 26.
[8] *Id.* at ¶ 27.
[9] *Id.* at ¶ 32.

Andrews considers two "factors" to decide which of those eligible candidates will enter the Steersman Program.[10] The first factor she considers is "whether there is a current need for a steersman (or more)," "considering the current number of steersman and mates, the number of barges/vessels, [and] the current ages of the captains," among other considerations.[11] The second factor Andrews considers is "the number of openings in the Steersman Program as compared to the number of individuals in the pool of candidates, with the most qualified individuals selected first . . . ."[12] To decide who is "most qualified," Andrews compares candidates' "leadership and performance skills, work ethic, initiative, judgment, experience, disciplinary history from the prior year, and . . . the amount of time that [the candidate] ha[s] been in the pool of candidates (should all other factors remain relatively even)."[13]

Harrison worked for Stone Oil from 2014 until November 2021, when Stone Oil fired him for yelling at a customer.[14] Harrison spent most of his tenure as a tankerman, but he hoped to become a captain through the Steersman Program.[15]

After Harrison obtained the requisite letters of recommendation, Andrews placed him in the "pool" of eligible candidates for the Steersman Program in February 2020.[16] But Andrews did not choose any tankerman for the program that year.[17]

---

[10] *Id.* at ¶ 33.
[11] *Id.* (capitalization modified).
[12] *Id.*
[13] *Id.*
[14] *Id.* at ¶¶ 8, 24.
[15] ECF No. 71-25 at 8; ECF No. 49-2 at ¶¶ 8–18.
[16] ECF No. 49-2 at ¶ 15.
[17] *Id.* at ¶ 35.

One position in the Steersman Program opened up in May 2021.[18] But Harrison was not chosen then; white tankerman Michael Yates was.[19] Andrews chose Yates "because he had worked as a tankerman since 2014, had zero safety violations, zero disciplinary reports, three glowing letters of recommendation, had a sterling reputation, and had . . . been in the pool of candidates since August 2018."[20] There were five total candidates in the "pool" then: Harrison and four white men.[21] Of the four candidates not selected, two had been in the "pool" longer than Harrison.[22]

Three more Steersman Program positions became available in September 2021.[23] But again, Harrison was not selected; three white men were: Derick Blackwell, Clayton Bourgeois, and Emmit Close.[24] In the "pool" then were six total candidates—Harrison and five white men.[25] Of the three candidates not selected, one of them, Edward Seifert, had worked as a tankerman for at least two years longer than Harrison and had been in the "pool" for 16 months longer than Harrison.[26]

Andrews explains her three selections for the September 2021 Steersman Program as follows. First, Andrews chose Blackwell "because he had maritime experience prior to joining Stone Oil, had worked as a tankerman since 2009, had zero disciplinary write-ups from the prior year, had zero safety violations, had a great

---

[18] *Id.* at ¶ 36.

[19] *Id.*

[20] *Id.* at (capitalization modified).

[21] *Id.* at ¶¶ 36, 38.

[22] *Id.* at ¶ 38 White candidate Derick Blackwell had been in the pool since July 2019, 7 months longer than Harrison; and white candidate Edward Seifert had been in the pool since October 2018, 16 months longer than Harrison. *See id.*

[23] *Id.* at ¶ 39.

[24] *Id.* at ¶¶ 39–40.

[25] *Id.*

[26] *Id.* at ¶ 41.

reputation as a trusted and good leader, hard worker, self-starter, strong performer, had held an apprentice mate's license since October 2015 . . . , and had been in the pool of candidates since July 2018.[27] Second, Andrews chose Bourgeois "because he had prior maritime experience with Trident Marine; had worked as a tankerman since August 2015; had an excellent reputation as a trusted and good leader, hard worker, self-starter, and strong performer; had zero disciplinary write-ups from the prior year; had zero safety violations; and had three glowing letters of recommendation."[28] Finally, Andrews chose Close "because he had zero disciplinary write-ups from the prior year; had zero safety violations; had worked as a tankerman/mate since February 2014; had a great reputation as a hard worker with a good worth ethic, good leader, and strong performer; had five letters of recommendation; and had his mate (pilot)'s license since February 2014."[29]

According to Andrews, Harrison was unlike the three candidates chosen for the September 2021 Steersman Program because he "had a mediocre or fair reputation largely due to his perceived work ethic (or lack thereof)."[30] By contrast, per Andrews, the three chosen candidates—Blackwell, Bourgeois, and Close—"had great or excellent reputations among[ ] the captains/masters" of Stone Oil's fleet.[31] Andrews maintains that race "played no part" in her decision to choose Blackwell, Bourgeois, and Close over Harrison for the Steersman Program in September 2021.[32]

---

[27] *Id.* at ¶ 42 (capitalization modified).
[28] *Id.* at ¶ 43 (capitalization modified).
[29] *Id.* at ¶ 44 (capitalization modified).
[30] *Id.* at ¶ 45.
[31] *Id.* (capitalization modified).
[32] *Id.* at ¶ 46.

About two months later, in November 2021, one of Stone Oil's captains reported "having issues" with Harrison.[33] Specifically, Andrews and Stone Oil's HR Director, Carolyn Wooton, received a November 8 email from Stone Oil's Offshore Manager, Daniel Bent, stating that Captain Scott Barno wanted Harrison replaced for their next hitch because Harrison was "not working out":

> Capt Scott [Barno] on the Gulf Venture informed me today that he is having issues with Kennor not working out.
> Did not calculate a stop gauge properly
> Crew has requested Assistant Chief Engineer to help out
> Did not secure a line properly
> He has requested we replace Kennor for the next hitch . . . .[34]

After she received Bent's email, Wooton called Captain Barno to ask about Harrison.[35] Captain Barno in turn told Wooton about a November 7 "radio incident" involving Harrison and a Stone Oil customer.[36] According to Captain Barno's later recounting, Harrison "was upset . . . over a dispute with quantity of product delivered" and Harrison "broadcast" a "profanity laced tirade" over the radio to the Stone Oil vessel and the customer's vessel.[37] For his part, Bent had no reason to believe that Captain Barno wanted Harrison off his vessel for any discriminatory reason.[38] And Harrison had no reason to disbelieve Captain Barno's recounting of the incident.[39]

---

[33] ECF No. 49-2 at 13.
[34] Id.
[35] ECF No. 49-6 at 11.
[36] Id.
[37] Id. at 41.
[38] ECF No. 49-7 at 12.
[39] ECF No. 49-6 at 11.

Ten days after the "radio incident," on November 17, Wooton fired Harrison "for having an outburst on the radio with a customer."[40] When Wooton decided to fire him, she did not know his race or that he wanted to join the Steersman Program.[41]

Just over seven months after he was fired for the "radio incident," in June 2022, Harrison filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[42] In his EEOC charge, Harrison generally alleged that (1) he wanted to join the Steersman Program; (2) he was told multiple times that his name was on the list; (3) a white employee was chosen for the Steersman Program; and (4) Stone Oil has discriminated against him based on his race.[43] Harrison also alleged that he would have been the first and only African American Captain employed by Stone Oil.[44] But that allegation has proved false. The undisputed summary-judgment record reflects that one African American employee, Danyell Collor, has served as a captain for Stone Oil since October 2019.[45] Moreover, Stone Oil's discovery responses confirm that at least seven African American employees have served as a captain in the last five years.[46] The parties have not clearly identified, however, the racial composition of the "pool" of Stone Oil employees eligible for promotion to captain.

---

[40] ECF No. 49-6 at 11.

[41] *Id.* at 8, 25.

[42] ECF No. 71-3.

[43] *Id.* at 1. Just under three months after Harrison filed his EEOC charge, in early September 2022, Stone Oil selected three people—including one African American employee—for the Steersman Program. ECF No. 49-2 at ¶ 47.

[44] ECF No. 71-3 at 1.

[45] ECF No. 49-2 at ¶ 24.

[46] ECF No. 71-32 at 5.

This employment-discrimination action followed in late August 2023.[47] In it, Harrison alleges that Stone Oil fired him and did not select him for the Steersman Program because he is African American. His operative complaint asserts claims against Stone Oil for disparate-impact discrimination under Title VII, retaliation under Title VII, failure to promote him to the Steersman Program under Title VII and Section 1981, and discriminatory discharge under Title VII and Section 1981.[48]

After various preliminaries not relevant here, Stone Oil moved to strike portions of the complaint and to dismiss the disparate-impact, retaliation, and failure-to-promote claims under Rule 12(b)(6).[49] The Court denied the motion to strike and granted in part and denied in part the motion to dismiss.[50] Specifically, the Court dismissed the retaliation claim because the Court concluded that Harrison failed to exhaust his administrative remedies.[51] But the Court declined to dismiss the disparate-impact claim on exhaustion grounds, concluding Harrison "exhausted his administrative remedies" on that claim "[b]ecause an investigation into the Steersman Program could be reasonably expected to grow out of the[ ] factual allegations" in the EEOC charge.[52] The Court also declined to dismiss the failure-to-promote claims as untimely.[53] The Court reasoned that "further discovery would be

---

[47] ECF No. 1.
[48] ECF No. 21.
[49] ECF No. 24.
[50] ECF No. 88.
[51] *Id.* at 10–13.
[52] *Id.* at 9.
[53] *Id.* at 15.

helpful in determining the timeliness of this claim," and explained that it would "address the timeliness of the claim, if raised, at the summary judgment phase."[54]

The Court's Rule 12 ruling left standing three sets of claims: (1) failure-to-promote claims under Title VII and Section 1981; (2) discriminatory-discharge claims under Title VII and Section 1981; and (3) a disparate-impact claim under Title VII.

Now, Stone Oil moves for summary judgment dismissing Harrison's remaining claims.[55] Harrison opposes.[56]

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The movant has the initial burden to show there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmovant will bear the burden of proof at trial, as Harrison will here, the movant meets its initial burden by pointing to "an absence of evidence" supporting the nonmovant's claim. *Id.*

---

[54] *Id.*

[55] ECF No. 49. The parties' summary-judgment briefing discusses Harrison's Title VII retaliation claim; that claim was live at the time but has since been dismissed. *See* ECF No. 88 at 13 (dismissing retaliation claim for failure to exhaust administrative remedies).

[56] ECF No. 71.

at 325. The movant "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (first citing *Celotex*, 477 U.S. at 323; and then citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86 (1990)). Nor must the movant "set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets its initial summary-judgment burden, however, the burden shifts to the nonmovant to "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact concerning the essential elements of its case for which it will bear the burden of proof at trial." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (first citing FED. R. CIV. P. 56(a) & (e); and then citing *Celotex*, 477 U.S. at 324). "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). Nor may a nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate specific facts that prove that a genuine [dispute] of material fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). If the nonmovant "fails to meet this burden, the motion for summary judgment *must* be granted." *Little*, 37 F.3d at 1076 (emphasis added).

11

In reviewing the summary-judgment record, the Court draws all reasonable inferences in favor of the nonmovant, Harrison. *See Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023). And the Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.   EVIDENTIARY OBJECTION

Harrison challenges the evidence on which Stone Oil principally relies to explain its failure to promote Harrison to the Steersman Program: the unsworn declaration of Stone Oil HR Manager Marisa Andrews, executed under 28 U.S.C. § 1746.[57] Harrison says Stone Oil's reliance on Andrews's unsworn declaration is "problematic" because it lacks "corroborative documentation, such as employment records or personnel files . . . ."[58] But Harrison's evidentiary objection lacks merit.

If Harrison intends to argue that Andrews's unsworn declaration is not competent summary-judgment evidence simply because it is unsworn, his argument fails. Section 1746 creates an "exception" to the rule that an "unsworn affidavit is incompetent" summary-judgment evidence. *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–06 (5th Cir. 1988). An unsworn declaration under 28 U.S.C. § 1746 may "substitute for an affiant's oath if the statement contained [in the declaration] is made under penalty of perjury and verified as true and correct." *Keiland Constr., L.L.C. v. Weeks Marine, Inc.*, 109 F.4th 406, 418 (5th Cir. 2024) (quotation omitted). The final line of Andrews's declaration states "I declare under penalty of perjury that the

---

[57] ECF No. 49-2 at 1–10.
[58] ECF No. 71 at 17, 18.

foregoing is based upon my personal knowledge and true and correct."[59] So Andrews's unsworn declaration "clearly passes muster under [Section] 1746." *Id.* And that declaration also meets the requirements of Rule 56(c)(4), because it is "based upon [Andrews's] personal knowledge"[60] as Stone Oil's HR Manager; it sets out facts that would be admissible in evidence; and it shows that Andrews is competent to testify on the matters stated.[61] In short: Andrews's declaration is not incompetent summary-judgment evidence just because it is unsworn. *See Hinojosa v. Johnson*, 277 F. App'x 370, 376 n.6 (5th Cir. 2008) (per curiam) (reasoning that an unsworn declaration was competent summary-judgment evidence because it met the requirements of Section 1746 and the requirement of the former Rule 56(e)(1), now Rule 56(c)(4)).

Equally off-point is Harrison's argument that Andrews's declaration "merely offers ultimate facts or conclusions without concrete support."[62] True, "mere statements of conclusions of law or ultimate facts" in a declaration or affidavit are not competent summary-judgment evidence. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985) (citations omitted). But Harrison fails to identify any "conclusions of law or ultimate facts" in Andrews's declaration. *Id.* (citations omitted). Andrews's detailed description of candidates' relative qualifications and her explanation of the reasons for the promotion decisions Stone Oil made are neither "conclusion[s] of law" nor "ultimate fact[s]." *Id.* (citations omitted). They are just facts.

---

[59] ECF No. 49-2 at ¶ 54.
[60] *Id.* at ¶¶ 53–54.
[61] *Id.* at ¶¶ 1–54.
[62] ECF No. 71 at 18.

The facts in Andrews's declaration are unlike the conclusory assertion disregarded in *Galindo*. The ultimate issue in that products-liability case was whether the defendant was "engaged in the business of selling" the sawmill trimmer that hurt the plaintiff. *Galindo*, 754 F.2d at 1214. The defendant's affidavit merely parroted the ultimate legal conclusion that would decide the case—that the defendant was "not in the business of selling trimmers." *Id.* at 1221 (quotation omitted). Harrison identifies no comparably conclusory assertion in Andrews's declaration.

Also unavailing is Harrison's insistence that Andrews's declaration be accompanied by "corroborative documentation, such as employment records or personnel files . . . ."[63] Harrison cites no authority for the proposition that an unsworn declaration that satisfies 28 U.S.C. § 1746 and Rule 56(c)(4) must be "corroborat[ed]" by any evidence whatsoever; the declaration is itself summary-judgment evidence.

In sum, Andrews's unsworn declaration is competent summary-judgment evidence. Harrison's objection to the Court's consideration of it fails.[64]

## IV.  ANALYSIS

Stone Oil moves for summary judgment on the three sets of claims left in this case: (A) failure-to-promote claims under Section 1981 and Title VII; (B) discriminatory-discharge claims under Section 1981 and Title VII; and (C) a disparate-impact claim under Title VII.[65] The Court takes each set of claims in turn.

---

[63] *Id.*

[64] Harrison does not invoke the sham-affidavit doctrine or show that Andrews's declaration impermissibly contradicts—rather than permissibly supplements—Andrews's deposition testimony. *See generally* ECF No. 71; *see Keiland Constr., L.L.C.*, 109 F.4th at 419 (rejecting challenge to district court's consideration of affidavit that supplemented but did not contradict deposition testimony).

[65] ECF No. 49.

### A.     Failure to Promote

Stone Oil makes three principal arguments in support of its motion for summary judgment on Harrison's failure-to-promote claims.[66] First, Stone Oil contends Harrison's Section 1981 failure-to-promote claims are untimely.[67] Second, Stone Oil contends Harrison's Title VII claims are untimely to the extent they rest on the May 2021 promotion of Michael Yates.[68] Finally, Stone Oil contends all of Harrison's failure-to-promote claims fail on the merits at the pretext stage of the *McDonnell Douglas* framework.[69]  The Court takes each argument in turn.

### 1.     Timeliness of Section 1981 Failure-to-Promote Claims

The Court does not grant summary judgment dismissing Harrison's Section 1981 failure-to-promote claims as untimely. The Court cannot say, on the sparse briefing presented, that there is no genuine dispute that Harrison's entry into the Steersman Program would have created a new and distinct relation with Stone Oil such that a one-year—rather than a four-year—prescriptive period applies.

Stone Oil says Harrison's Section 1981 failure-to-promote claims are untimely under Louisiana's now-repealed one-year prescriptive period for torts because Harrison did not sue within a year of Stone Oil's failure to promote him to the Steersman Program in September 2021.[70] Harrison counters that those failure-to-promote claims are timely under the federal four-year catch-all limitations period.[71]

---

[66] ECF No. 49-9.
[67] *Id*. at 7.
[68] *Id*. at 8.
[69] *Id*. at 8–11.
[70] *Id*. at 7.
[71] ECF No. 71 at 9–10.

Timeliness turns on the prescriptive period that applies: Louisiana's one-year period for torts arising before July 1, 2024, LA. CIV. CODE ANN. art. 3492, *repealed by* TORT ACTIONS, 2024 La. Sess. Law Serv. Act. 423 (H.B. 315),[72] or the four-year federal catch-all period, 28 U.S.C. § 1658(a). But the parties agree the governing period turns on whether Harrison's entry into the Steersman Program "rises to the level of a new and distinct relation" with Stone Oil. *Police Ass'n of New Orleans v. City of New Orleans*, 100 F.3d 1159, 1170–71 (5th Cir. 1996). If so, Louisiana's one-year period applies; if not, the federal four-year period applies. *See Bardell v. Jefferson Par. Sch. Bd.*, No. 23-30223, 2024 WL 3408621, at *2 (5th Cir. July 15, 2024) (per curiam).

To decide if Harrison's entry into the Steersman Program "rises to the level of a new and distinct relation" with Stone Oil, the Court compares Harrison's duties, salary, and benefits as an AB tankerman with the duties, salary, and benefits "incident to" the position of apprentice mate/steersman in the Steersman Program. *See Police Ass'n of New Orleans*, 100 F.3d at 1170–71. If Harrison's promotion to apprentice mate/steersman in the Steersman Program would have "involve[d] substantial changes in these areas," then the promotion would "rise[ ] to the level of a new and distinct relation" with Stone Oil. *Id.* This inquiry ultimately "requires a fact-specific examination" and "does not lend itself to blanket prescriptions." *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1370 (5th Cir. 1992) (citation omitted).

---

[72] Harrison's failure-to-promote claims are based on his being passed over for the Steersman Program in 2021. Because those claims arose before July 1, 2024, the one-year prescriptive period of now-repealed Article 3492 would apply to them. *See Stanley v. Morgan*, 120 F.4th 467, 470 n.1 (5th Cir. 2024) (applying now-repealed Article 3492 to claim that arose before July 1, 2024).

The test aims "to distinguish between routine increases in salary or responsibility [that] are clearly part of an original contract of employment and promotions [that] signal [a] new . . . contractual relationship between employee and employer." *Harrison v. Assocs. Corp. of N. Am.*, 917 F.2d 195, 198 (5th Cir. 1990). By way of example, the Fifth Circuit has recognized these sorts of promotions as creating a new and distinct employment relationship: law-firm associate to partner;[73] billing clerk to supervisor;[74] "regular" police officer to sergeant with supervisory duties;[75] manager without supervisory responsibilities to manager with supervisory responsibilities;[76] teacher to administrator;[77] and system analyst without supervisory authority to general manager responsible for at least 30 other positions.[78]

On the sparse briefing before it,[79] the Court finds that Stone Oil fails to carry its burden to show that there is no genuine dispute that Harrison's entry into the Steersman Program would have created "a new and distinct relation" between Harrison and Stone Oil such that Louisiana's one-year prescriptive period applies. *Police Ass'n of New Orleans*, 100 F.3d at 1170–71. Stone Oil says Harrison's promotion to apprentice mate/steersman in the Steersman Program would have carried with it a salary increase (from $412 per day to $510 per day) and the addition

---

[73] *Police Ass'n of New Orleans*, 100 F.3d at 1171 (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984)).

[74] *Id.* (citing *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908 (4th Cir. 1989)).

[75] *Id.*

[76] *Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 699 (5th Cir. 2008) (per curiam).

[77] *Bardell*, 2024 WL 3408621, at *2.

[78] *Hill v. Cleco Corp.*, 541 F. App'x 343, 345 (5th Cir. 2013) (per curiam).

[79] The Court emphasizes that its ruling is based on the limited briefing before it and should not be construed as a broader pronouncement of law. Stone Oil devotes just two paragraphs of its opening brief to this fact-intensive argument and makes no attempt to liken the promotion at issue here to promotions the Fifth Circuit has found create a new and distinct relation. ECF No. 49-9 at 7.

of two duties: (1) steering, navigating, and operating tugs and barges; and (2) setting courses and determining voyage plans.[80] But Stone Oil cites no authority supporting the proposition that a $98 increase in daily pay is a "substantial change[ ]" in salary for purposes of the "new and distinct relation" analysis. *Id.* Nor has Stone Oil shown that the addition of those two duties, even assuming their significance, is sufficient standing alone to create a "new and distinct relation" between Stone Oil and Harrison. *Id.* The only two cases Stone Oil cites to support its "new and distinct relation" argument concern promotions that entailed substantial added supervisory authority.[81] *See Hill*, 541 F. App'x at 345–46 (promotion from system analyst without supervisory authority to general manager responsible for at least 30 other positions); *Police Ass'n of New Orleans*, 100 F.3d at 1170–71 (promotion from "regular" police officer to sergeant with "supervisory duties"). At bottom, Stone Oil fails to convince the Court that Harrison's entry into the Steersman Program is enough like the promotions the Fifth Circuit has held give rise to a new and distinct employment relationship so as to trigger application of Louisiana's one-year prescriptive period.

Accordingly, because Stone Oil fails to show that there is no genuine dispute that Harrison's entry into the Steersman program would have created a new and distinct employment relationship, Stone Oil fails to show that Louisiana's one-year prescriptive period applies. So Stone Oil fails to show that Harrison's Section 1981 failure-to-promote claims are untimely. Importantly, however, Stone Oil is still

---

[80] ECF No. 49-9 at 7.
[81] *Id.*

entitled to summary judgment dismissing those claims at the pretext stage of the *McDonnell Douglas* framework for the reasons given in Section IV(A)(3).

### 2.    Timeliness of Title VII Failure-to-Promote Claims Based on Yates's May 2021 Promotion to the Steersman Program

The Court grants summary judgment dismissing any Title VII failure-to-promote claims that Harrison intends to assert arising from Yates's May 2021 promotion to the Steersman Program. That is for two independent reasons. First, Harrison abandoned any such claims by failing to meaningfully respond to Stone Oil's arguments for dismissing them. And second, any such claims are untimely.

Stone Oil contends Harrison's Title VII failure-to-promote claims are untimely to the extent they rest on Stone Oil's May 2021 promotion of Yates to the Steersman Program because Harrison filed his EEOC charge more than 300 days later.[82] Harrison offers no real rejoinder.[83] Instead, he complains that Stone Oil's timeliness argument is "unnecessary," and he insists that "[w]hether the May 2021 decision falls outside the 300-day filing period has no bearing on the fact that the September 2021 failure to promote is properly before the Court."[84] Because Harrison offers no meaningful response to Stone Oil's timeliness argument, Harrison has abandoned any Title VII failure-to-promote claims based on Yates's May 2021 promotion and forfeited any argument opposing dismissal of any such claims. *See, e.g.*, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff "abandoned" claim by failing to defend against its dismissal in response to dispositive motions).

---

[82] ECF No. 49-9 at 8.
[83] ECF No. 71 at 11.
[84] *Id.*

Abandonment aside, Stone Oil shows that there is no genuine dispute that any Title VII claims based on Yates's May 2021 promotion are untimely. "In a deferral state like Louisiana, a plaintiff must file his charge with the EEOC within 300 days from the date of the alleged discriminatory act to preserve his right to sue in federal court." *Harrison v. John W. Stone Oil Distribs.*, No. 23-CV-5037, 2025 WL 1837463, at *6 (E.D. La. July 3, 2025) (Long, J.) (citation and footnote omitted). Harrison filed his EEOC charge on June 21, 2022;[85] 300 days before then is August 25, 2021. Because Yates's May 2021 promotion occurred more than 300 days before Harrison filed his EEOC charge, any Title VII claim arising from that promotion is untimely.

### 3.    Pretext

The Court grants summary judgment dismissing all of Harrison's failure-to-promote claims—under both Title VII and Section 1981—because Harrison fails to create a genuine dispute at the pretext stage of the *McDonnell Douglas* framework. That is because Harrison fails to cite evidence from which a reasonable jury could find that (1) he was clearly better qualified than the three white employees chosen over him for the Steersman Program in September 2021; or (2) Stone Oil's legitimate, nondiscriminatory reasons for not promoting him are false or unworthy of credence.

The same analysis controls the Court's consideration of Harrison's failure-to-promote claims under both Section 1981 and Title VII. *See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Those failure-to-promote claims are based on circumstantial rather than direct evidence, so they are subject to the three-step

---

[85] ECF No. 49-2 at 23.

*McDonnell Douglas* burden-shifting framework. *See Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the *McDonnell Douglas* framework, Harrison must first make a *prima facie* case by showing that (1) he was not promoted; (2) he was qualified for the Steersman Program; (3) he fell within a protected class at the time he was not promoted; and (4) Stone Oil promoted someone outside of his protected class or otherwise failed to promote him because of his race. *See Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013). Stone Oil does not argue that Harrison fails to make a *prima facie* case, and the Court assumes that he does so.

Because the Court assumes Harrison makes a *prima facie* case, the burden shifts to Stone Oil to proffer a legitimate, nondiscriminatory reason for not promoting Harrison to the Steersman Program. *See id.* at 347. To meet that burden, Stone Oil must "produc[e] evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for" failing to promote Harrison to the Steersman Program. *Id.* at 347 n.5 (quotation and alterations omitted). Stone Oil meets that burden because it points to evidence permitting a conclusion that Stone Oil promoted Blackwell, Bourgeois, and Close over Harrison because each of them had more maritime experience and a better overall reputation than Harrison:

- Blackwell had been a tankerman for about six years longer than Harrison, had a "great" reputation, and had been in the "pool" for about 18 months longer than Harrison.[86]

---

[86] ECF No. 49-2 at ¶ 42.

- Bourgeois had been a tankerman longer than Harrison, had an "excellent" reputation, had "prior maritime experience," and had his apprentice mate's license when he was promoted.[87]

- Close had been a tankerman longer than Harrison, had a "great reputation," and had his mate's/pilot's license for more than 7 years before the promotion.[88]

- Harrison had no prior maritime experience[89] and "had a mediocre or fair reputation largely due to his perceived work ethic (or lack thereof)."[90]

Because Stone Oil meets its burden to produce a legitimate, nondiscriminatory reason for not promoting Harrison to the Steersman Program, the burden shifts back to Harrison to show that Stone Oil's reasons are pretextual. *See Roberson-King v. La Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377, 381 (5th Cir. 2018). Harrison may meet that burden by showing (1) he was "clearly better qualified" than Blackwell, Bourgeois, or Close; or (2) Stone Oil's proffered reasons for not promoting him are "false or unworthy of credence." *Id.* (quotation and citations omitted). In deciding if Harrison has shown pretext in one of those ways, the Court "does not engage in second-guessing of" Stone Oil's "business decisions." *Id.* (quotation omitted).

As for the first way, Harrison fails to cite evidence from which a reasonable jury could find that he was "clearly better qualified" than Blackwell, Bourgeois, or Close. *Id.* (quotation and citation omitted). To show that he was "clearly better qualified," Harrison "must present evidence from which a jury could conclude that no

---

[87] *Id.* at ¶ 43.

[88] *Id.* at ¶ 44.

[89] ECF No. 49-5 at 4–5

[90] ECF No. 49-2 at ¶ 45. Citing the declaration of former Stone Oil employee Michael Yates, Harrison says that Yates "will testify that [Harrison] was an exemplary employee with an excellent reputation." ECF No. 71 at 15. But Yates's declaration includes no non-conclusory assertion from which a reasonable jury could infer that Harrison had an "excellent reputation." ECF No. 71-5.

reasonable person, in the exercise of impartial judgment, could have chosen" Blackwell, Bourgeois, or Close over him for the Steersman Program. *Id.* (quotation and citation omitted). Harrison fails to do so. His summary-judgment response does not even contend that he was "clearly better qualified" than Blackwell, Bourgeois, or Close—much less direct the Court to evidence from which a reasonable jury could make that finding.[91]  So Harrison fails to show pretext in the first way.[92]

As for the second way, Harrison fails to cite evidence from which a reasonable jury could find that Stone Oil's explanation for promoting others over him is "false or unworthy of credence." *Id.* (quotation and citations omitted). To show the falsity of Stone Oil's explanation, Harrison principally relies on (1) a 2017 "Conciliation Agreement" between Stone Oil and the United States Department of Labor; (2) statistical evidence; and (3) Stone Oil's use of some subjective criteria to decide who enters the Steersman Program. But Harrison fails to carry his burden to show that this evidence, whether considered individually or cumulatively, creates a genuine dispute of material fact at the pretext stage of the *McDonnell Douglas* framework.

Harrison first points to a "Conciliation Agreement" in which Stone Oil agreed to take steps to remedy racially discriminatory hiring practices for deckhand

---

[91] ECF No. 71.

[92] For reasons he does not clearly explain, Harrison tries only to show that he was better qualified than three Stone Oil employees, including one African American employee, selected for the Steersman Program in *September 2022*—about 10 months after Stone Oil fired him for yelling at a customer over the radio and about a year after Stone Oil did not select him for the Steersman Program in September 2021. ECF No. 71 at 13–14. Harrison's failure-to-promote claims arise from Stone Oil's selection of three employees over him for the Steersman Program in September 2021. The qualifications of employees selected in September 2022 have no bearing on whether Harrison was clearly better qualified than the employees selected for the Steersman Program in September 2021.

positions from August 2012 through August 2014.[93] But Harrison does not explain how that document is probative of pretext with respect to the specific decision at issue: Andrews's 2021 decision to choose others over Harrison for the Steersman Program. Indeed, Harrison cites neither evidence nor authority supporting the proposition that Stone Oil's promise to take steps to remedy past discrimination—occurring seven years earlier against applicants for positions not at issue here—bears on the falsity of the specific reasons Andrews proffers for promoting others to the Steersman Program over Harrison in 2021. *Cf. Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1071 (5th Cir. Unit A 1981) (evidence that African American employees had been excluded from administrative positions failed to "demonstrate that the reason advanced for failure to promote [the plaintiff] lacked either substance or credibility").

Along similar lines, Harrison's statistical evidence fails to create a genuine dispute that Andrews's reasons for promoting others to the Steersman Program over Harrison are pretext for racial discrimination. "[S]tatistical evidence usually cannot rebut the employer's articulated nondiscriminatory reasons" at the pretext stage. *E.E.O.C. v. Tex. Instruments*, 100 F.3d 1173, 1184 (5th Cir. 1996) (citation omitted). But statistical evidence "may be probative of pretext in limited circumstances," "depend[ing] on all the surrounding facts, circumstances, and other evidence of discrimination." *Id.* (citation omitted). Harrison cites two pieces of statistical evidence: (1) of the 13 Stone Oil employees promoted to apprentice mate between 2018 and 2025, 11 were white; and (2) 75 of Stone Oil's 95 captains are white.[94]

---

[93] ECF No. 71-12 at 3.
[94] ECF No. 71 at 16.

Harrison fails to show that either statistic supports an inference that Andrews's proffered reasons for not promoting him are pretextual for the simple reason that Harrison provides no explanation of the racial composition of the pool of qualified applicants. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 n.13 (1977) (noting that "[w]hen special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value"). Indeed, Harrison does not state the number of white and non-white employees eligible for promotion to apprentice mate between 2018 and 2025; nor does he state the number of white and non-white employees eligible to become a captain. The upshot is that Harrison's statistics "do[ ] not demonstrate pretext." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003) (plaintiff failed to create a genuine dispute on pretext by pointing to employer's alleged failure to promote African American males to managerial or supervisory positions (citation omitted)).

Finally, Stone Oil's use of subjective promotional criteria does not create a genuine dispute as to pretext. "The mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." *Id.* (citation omitted). "[A]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII." *Id.* (quotation omitted). The case on which Harrison principally relies to support his subjective-criteria argument, *Medina v. Ramsey Steel Co.*, does not help him for at least two independent reasons. 238 F.3d

25

674 (5th Cir. 2001). First, *Medina* considered subjective criteria at the *prima-facie-*case stage—not the pretext stage. *Id.* at 681; *see Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 833 (5th Cir. 2022) (distinguishing *Medina* on the same basis and rejecting the argument "that employers are barred from using subjective criteria to evaluate employees").[95] Second, the criteria there were "entirely subjective"; Stone Oil's promotional criteria are not. *Medina*, 238 F.3d at 681. Indeed, Stone Oil looks to at least some objective considerations, like a candidate's disciplinary history from the prior year and the amount of time the candidate has been in the "pool" of candidates.[96]

Accordingly, viewing the evidence cumulatively and in the light most favorable to Harrison, the Court finds that Harrison fails to carry his burden to point the Court to evidence from which a reasonable jury could find that Stone Oil's proffered legitimate, nondiscriminatory reasons for not promoting him to the Steersman Program were pretext for racial discrimination. So the Court grants summary judgment dismissing his failure-to-promote claims under Section 1981 and Title VII.

## B.    Discriminatory Discharge

The Court grants summary judgment dismissing Harrison's discriminatory-discharge claims—under both Title VII and Section 1981—for two independent reasons. First, Harrison fails to make a *prima facie* case of racial discrimination because he fails to cite evidence from which a reasonable jury could find that he was replaced by, or treated less favorably than, any similarly situated non-African

---

[95] Harrison's other cases are off-point for the same reason: They address an employer's use of subjective criteria at the *prima-facie*-case stage. *See Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993); *Crawford v. W. Elec. Co.*, 614 F.2d 1300, 1315–16 (5th Cir. 1980).

[96] ECF No. 49-2 at ¶ 33.

American Stone Oil employee. And second, Harrison fails to create a genuine dispute of material fact at the pretext stage because he fails to point the Court to evidence from which a reasonable jury could find that Stone Oil's proffered legitimate, nondiscriminatory reason for firing him was a pretext for racial discrimination.

The same analysis controls the Court's consideration of Harrison's discriminatory-discharge claims under both Title VII and Section 1981. *See Clark v. City of Alexandria*, 116 F.4th 472, 485–86 (5th Cir. 2024). The Court evaluates those claims under the three-step *McDonnell Douglas* burden-shifting framework because Harrison lacks direct evidence of discrimination. *See Watkins*, 997 F.3d at 281.

Harrison's discriminatory-discharge claims fail at the first step of *McDonnell Douglas* because he fails to point the Court to evidence from which a reasonable jury could find that he made a *prima facie* case of discrimination.  To make a *prima facie* case of discrimination on summary judgment, Harrison must point the Court to evidence showing that (1) he belongs to a protected group; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside his protected group or treated less favorably than other similarly situated employees outside his protected group. *See Clark*, 116 F.4th at 486.

Harrison fails on the fourth prong. He does not cite evidence showing that he was replaced by someone who is not African American or that he was treated less favorably than a similarly situated Stone Oil employee who is not African American. *See Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024). To be "similarly situated," the coworker must "hold the same job or hold the same job

responsibilities as" Harrison; "must share the same supervisor or have his employment status determined by the same person as" Harrison; and "must have a history of violations or infringements similar to that of" Harrison. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quotation and alterations omitted).

Harrison's limited rejoinder fails to persuade. He contends only that he was "replaced by" two white Stone Oil employees, Trevor and Levi Holdiness.[97] But neither one "replaced" him in any relevant sense. The undisputed summary-judgment record reflects that Stone Oil selected Trevor and Levi Holdiness for the Steersman Program in September 2022—about 10 months after Stone Oil fired Harrison, and about a year after Stone Oil did not select Harrison for the September 2021 Steersman Program.[98] Harrison cites no evidence that Trevor or Levi Holdiness was hired for the specific tankerman position Harrison held at the time Stone Oil fired him. Nor could either of those employees be considered Harrison's "replacement" in the Steersman Program, because there is no genuine dispute that Harrison never entered that program and was not even a Stone Oil employee eligible for the program at the time they were chosen for it in 2022. In all events, even if Trevor or Levi Holdiness could be considered Harrison's "replacement" in any relevant sense, Harrison fails to cite evidence showing that either one is similarly situated to him insofar as either one has "a history of violations or infringements similar to that of" Harrison. *Alkhawaldeh*, 851 F.3d at 426 (quotation and alterations omitted).

---

[97] ECF No. 71 at 19–20.
[98] *Id.*

Even if Harrison had made a *prima facie* case of discrimination, his discriminatory-discharge claim would fail at the third step of *McDonnell Douglas* because he fails to cite evidence sufficient to show that Stone Oil's legitimate, nondiscriminatory reason for firing him was a pretext for racial discrimination. Stone Oil says it fired Harrison because he violated company policy[99] and "perform[ed] below company standards"[100] when he "ha[d] an outburst on the radio with a customer."[101] Poor performance and violation of company policy are legitimate, nondiscriminatory reasons for firing an employee. *See Owens*, 33 F.4th at 826 (poor performance); *Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020) (violation of company policy). To avoid summary judgment at this pretext stage, then, Harrison must now "produce substantial evidence" showing that Stone Oil's stated reason for firing him "is a pretext for discrimination" by pointing to "evidence of disparate treatment or by showing that [Stone Oil's] proffered explanation is false or unworthy of credence." *Watkins*, 997 F.3d at 283 (quotation omitted). Harrison fails to do so.

Harrison fails to "produce substantial evidence" of disparate treatment. *Id.* (quotation omitted). As noted, Harrison fails to show disparate treatment because he fails to cite evidence from which a reasonable jury could find that he was replaced by, or treated less favorably than, a similarly situated non-African American employee.

Nor does Harrison "produce substantial evidence" showing that Stone Oil's proffered reason for firing him—his "outburst on the radio with a customer"[102]—is

---

[99] ECF No. 49-2 at 16.
[100] *Id.* at 14.
[101] ECF No. 49-6 at 11.
[102] *Id.*

"false or unworthy of credence." *Id.* (quotation omitted). "[A] plaintiff's summary judgment proof must consist of more than a mere refutation of the employer's legitimate[,] nondiscriminatory reason." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quotation omitted). But Harrison's proof consists of little more than an attempt to refute that the "outburst on the radio with a customer"[103] ever occurred. That attempted proof is not "substantial evidence" that Stone Oil's reason for firing Harrison is a pretext for racial discrimination. *Watkins*, 997 F.3d at 283 (quotation omitted); *see, e.g.*, *Clark*, 116 F.4th at 485 (holding that employee fired for lying failed to create a genuine dispute of material fact at the pretext stage by merely claiming "that whether he lied presents a genuine dispute of material fact").

Importantly, even if Stone Oil were wrong about the radio incident, "[t]he question is not whether [Stone Oil] made an erroneous decision; it is whether the decision was made with discriminatory motive." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 900 (5th Cir. 2025) (quotation omitted). "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Id.* (quotation omitted). "Indeed, a dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable fact finder to infer that [the] proffered justification is unworthy of credence." *Id.* (quotation omitted). The Stone Oil employee who fired Harrison, HR Director Carolyn Wooton, testified that she had no reason to disbelieve Captain Barno's account of the radio incident.[104] And Harrison, for his part, cites no evidence from which a

---

[103] *Id.*
[104] *Id.* at 11.

reasonable jury could find that Wooton did not reach that decision in good faith and with a reasonable belief in the accuracy of Captain Barno's account. *See, e.g.*, *Little v. Repub. Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (noting that "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification" (citation omitted)). Because Harrison attempts merely to dispute the evidence concerning his job performance and the occurrence of the radio incident with a Stone Oil customer, he necessarily fails to carry his burden to "produce substantial evidence" of pretext. *Watkins*, 997 F.3d at 283 (quotation omitted); *see, e.g.*, *Rodriguez*, 129 F.4th at 900.

In sum, Stone Oil is entitled to summary judgment dismissing Harrison's discriminatory-discharge claims for the independent reasons that Harrison fails to make a *prima facie* case of discrimination and fails to show that Stone Oil's proffered legitimate, nondiscriminatory reason for firing him is a pretext for discrimination.

## C.  Disparate Impact

The Court grants summary judgment dismissing Harrison's Title VII disparate-impact claim for two independent reasons. First, Harrison fails to make a *prima facie* case of disparate-impact discrimination because he fails to cite statistical evidence from which a reasonable jury could find that the Steersman Program has

resulted in prohibited discrimination. Second, Harrison abandoned his disparate-impact claim by inadequately addressing Stone Oil's arguments for dismissing it.[105]

Harrison fails to make a *prima facie* case of disparate-impact discrimination. To make a *prima facie* case, Harrison "must both identify the employment practice that has the allegedly disproportionate impact and establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (citation omitted). Harrison fails to carry his burden to establish causation because he fails to cite statistical evidence comparing the effects of the Steersman Program on African American and non-African American groups of Stone Oil employees. *See, e.g.*, *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 492 (5th Cir. 2011) (per curiam) (affirming summary judgment on disparate-impact claim because plaintiff failed to "provide[ ] any evidence of racial- or gender-based statistical disparities").

Harrison abandoned his disparate-impact claims in any event. His summary-judgment response does not address Stone Oil's arguments for dismissal of his disparate-impact claim.[106] Instead, his response purports to "adopt[ ] and incorporate all law and argument" in his motion-to-dismiss opposition.[107] But his motion-to-dismiss opposition does not address Stone Oil's summary-judgment argument that he lacks the statistical evidence needed to make a *prima facie* disparate-impact

---

[105] The Court need not address Stone Oil's other arguments for dismissing Harrison's Title VII disparate-impact claim. *See* ECF No. 49-9 at 20–21 (exhaustion); *id.* at 22–24 (failure to identify a specific, facially neutral policy or practice).

[106] ECF No. 71.

[107] *Id.* at 25.

claim.[108] The upshot is that Harrison offers no response at all to Stone Oil's argument that his disparate-impact claims fail at the *prima-facie*-case stage for lack of statistical evidence showing that the Steersman Program "has resulted in prohibited discrimination." *Stout*, 282 F.3d at 860 (citation omitted). Because Harrison fails entirely to address this argument for dismissing his disparate-impact claim, he has abandoned the claim and forfeited any argument opposing dismissal of it. *See, e.g.*, *Black*, 461 at 588 n.1 (plaintiff "abandoned" a claim by failing to address arguments for dismissing it); *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 574 (5th Cir. 2021) (party forfeited argument on an issue by failing to adequately brief the issue).

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Stone Oil's motion[109] for summary judgment is **GRANTED**. Harrison's remaining claims are **DISMISSED WITH PREJUDICE**. A final judgment will follow in accordance with Federal Rule of Civil Procedure 58.

New Orleans, Louisiana, this 6th day of August, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[108] ECF No. 25.
[109] ECF No. 49.